UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Estate of Robert Martel,<br>　　　　　Plaintiff,<br><br>v.<br><br>Hillsborough County,<br>Bryanna Gue, RN,<br>Erica Gustafson, LPN,<br>Katelyn Hrubiec, LPN, and<br>Samuel Mutungi,<br>　　　　　Defendants. | **COMPLAINT**<br><br>**JURY DEMANDED** |

## PRELIMINARY STATEMENT

1.　This is a civil rights and medical malpractice action in which the plaintiff, ESTATE OF ROBERT MARTEL, seeks relief for the defendants' violation of ROBERT MARTEL'S rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, rights secured by the fifth and fourteenth Amendments to the United States Constitution, and rights secured under the laws of the State of New Hampshire. The plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs, interest and attorneys' fees, and other and further relief as this Court deems just and equitable.

## JURISDICTION AND VENUE

2.　Jurisdiction is invoked pursuant to 28 U.S.C. §1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of plaintiff's constitutional and civil rights.

3.　Jurisdiction is also invoked pursuant to the fifth and fourteenth amendments to the United States Constitution and 42 U.S.C. § 1983.

1

4. The plaintiff requests that this Court exercise supplemental jurisdiction over any state court cause of action that arises from a common nucleus of operative facts that give rise to the federally based causes of action pleaded herein. 28 U.S.C. § 1367.

5. Venue is proper for the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 1391(b).

## JURY TRIAL DEMANDED

6. Plaintiff demands a trial by jury on each of the causes of action pleaded herein.

## PARTIES

7. Plaintiff STEPHANIE MARTEL, THE ADMINISTRATOR OF THE ESTATE OF ROBERT MARTEL, at all times relevant herein, resided at 866 Mammoth Road, Manchester, New Hampshire 03104.

8. At all times relevant, ROBERT MARTEL was an alcoholic and an inmate at the Hillsborough County House of Corrections ("Valley Street Jail").

9. Defendant HILLSBOROUGH COUNTY is a municipal entity created and authorized under the laws of the State of New Hampshire. It is authorized by law to operate Valley Street Jail, through its Department of Corrections, where it houses inmates and detainees. Valley Street Jail has a place of business at 445 Willow Street, Manchester, New Hampshire 03103.

10. Defendants BRYANNA GUE, RN, ERICA GUSTAFON, LPN, and KATELYN HRUBIEC, LPN, at all times relevant, were RNs, LPNs, or other medical care personnel at Valley Street Jail, acting individually and/or in their capacity as nurses and employees of defendant HILLSBOROUGH COUNTY, who were responsible for providing nursing care to the

inmates and detainees at Valley Street Jail, including ROBERT MARTEL. They are being sued individually and not in their official capacity.

11. Defendant SAMUEL MUTUNGI, at all times relevant, was a Correctional Officer at Valley Street Jail, acting individually and/or in his capacity as an officer and employee of defendant HILLSBOROUGH COUNTY, who was responsible for the welfare and treatment of the inmates and detainees at Valley Street Jail, including ROBERT MARTEL. He is being sued individually and not in his official capacity.

## FACTS

12. ROBERT MARTEL was a selfless, hardworking family man. He had a loving wife, Stephanie, and two beautiful daughters, Brianna and Kirsten, whom he loved spending time with. ROBERT MARTEL had a zest for life and loved to stay active—he enjoyed nature hikes, traveling, deep sea fishing, swimming, and was always up for an adventure. He was also no stranger to hard work. ROBERT MARTEL worked construction both on and off the clock, oftentimes taking on remodeling projects around the house and working on motorcycles and cars in his spare time. More than anything, though, ROBERT MARTEL was caring and selfless. He was always willing to lend a helping hand and went out of his way to make sure his friends and family were taken care of.

13. Yet, unfortunately, like too many other young men and women in New Hampshire, ROBERT MARTEL struggled with drug and alcohol addiction. As is common for drug and alcohol addicts, ROBERT MARTEL had occasional "run-ins" with the law.

14. On May 7, 2021, ROBERT MARTEL was ordered to serve a 10-day sentence at Valley Street Jail for violating N.H. R.S.A. § 264:25, "Conduct After an Accident."

3

15. Because ROBERT MARTEL was given credit for one day of pre-hearing detention and was approved for "Good Time Reduction," however, it was expected that ROBERT MARTEL would only have to serve 6 days imprisonment at Valley Street Jail.

16. Unfortunately, ROBERT MARTEL only made it through the first 30 hours of his brief imprisonment before he tragically perished at only 37-years-old, after experiencing severe withdrawal while an inmate in the custody of defendant HILLSBOROUGH COUNTY at Valley Street Jail.

17. The timeline shows that—in just 30 short hours—the Defendants, with deliberate indifference, denied ROBERT MARTEL the adequate medical care and attention necessary to treat his serious medical needs.

18. On Monday, May 10, 2021, at 6:00 p.m., ROBERT MARTEL reported to Valley Street Jail to serve his brief, 6-day sentence.

19. Roughly three hours later during his initial screening in booking, ROBERT MARTEL informed defendant GUE that "he drinks a bottle of vodka per day." He also specifically told defendant GUE during this screening that he had drank a bottle of vodka that same day, on May 10, 2021, prior to reporting to Valley Street Jail.

20. ROBERT MARTEL was placed on Detox Watch at approximately 9:55 p.m. on May 10, 2021. He was instructed to be placed on a lower bunk and was provided an extra mattress for the floor due to seizure concerns. He was also prohibited from using the gym or engaging in weightlifting or rec-yard activities until further notice.

21. ROBERT MARTEL was then placed in Unit 2A, which houses Detox Watch inmates.

22. At approximately 12:04 a.m. on May 11, 2021, ROBERT MARTEL was seen at his cell door by defendant GUSTAFSON, who noted that he was at risk for detox and should continue to be monitored.

23. It was not until eight hours later at approximately 8:10 a.m., that another nurse observed ROBERT MARTEL in his cell. She too noted that he was at risk for detox and advised him to eat, drink, and get some rest.

24. An hour and a half later at 9:40 a.m., defendant HRUBIEC observed ROBERT MARTEL in his cell, experiencing several withdrawal symptoms. She noticed that he had beads of sweat running down his face and was agitated and restless.

25. At this time, ROBERT MARTEL again notified Valley Street staff, this time, defendant HRUBIEC, that he struggles with substance abuse and drinks 750 mL of vodka daily. Defendant HRUBIEC also noted that ROBERT MARTEL had drank excessively on May 10, 2021, the day prior to reporting to Valley Street Jail.

26. ROBERT MARTEL further notified defendant HRUBIEC of his daily fentanyl use—which was physically apparent from the needle marks on his arm—and told her that he experiences serious withdrawal problems when he stops taking drugs.

27. During defendant HRUBIEC's 9:40 a.m. screening, it was readily apparent that ROBERT MARTEL was detoxing from substance abuse. Not only was he sweating profusely and becoming increasingly agitated, he also was experiencing chills and tremors. These symptoms are three of the key symptoms present on the Alcohol Detox Flow Sheet (CIWA), which is used by nurses to assess an inmate's withdrawal levels.

28. Nurse HRUBIEC assigned ROBERT MARTEL a CIWA score of 13, which indicated that he was experiencing mild to moderate withdrawal.

29. Upon information and belief, the CIWA scoring is based on each individual nurse's subjective assessment of the inmate's symptoms, rather than a uniform, objective measure, or the inmates' own self-reporting or assessment.

30. It was not until after this screening by defendant HRUBIEC that ROBERT MARTEL was ordered to be placed on EtOH Withdrawal Protocol by Christopher Braga, MD, at approximately 10:00 a.m. on May 11, 2021.

31. Despite his increasingly concerning withdrawal symptoms and placement on EtOH Withdrawal Protocol, ROBERT MARTEL was not assessed by a Valley Street Jail nurse again until approximately 4:40 p.m., almost seven hours later.

32. The nurse that conducted this assessment, defendant GUSTAFSON, scored ROBERT MARTEL's CIWA withdrawal levels at a 5, despite his continued complaints of sweats, chills, body aches, restlessness, anxiety, agitation, nausea, and vomiting—which compromise half of the total symptoms considered.

33. Other than a brief check-in for COVID monitoring at 8:00 p.m., ROBERT MARTEL was not checked on again until approximately 10:55 p.m. on May 11, 2021, when Correctional Officer defendant MUTUNGI approached his cell during a security round.

34. At this time, defendant MUTUNGI observed ROBERT MARTEL laying on the mattress on the floor on his back and asked for his last name but did not receive a response.

35. Defendant MUTUNGI reportedly then "knocked lightly" on ROBERT MARTEL's cell door, causing ROBERT MARTEL to wake up and respond "Martel" when asked to state his last name.

36. Defendant MUTUNGI made no further efforts to assess or document ROBERT MARTEL's health and condition, despite knowing that ROBERT MARTEL was on Detox Watch and experiencing numerous alcohol withdrawal symptoms.

37. It was not even a full hour later, at approximately 11:40 p.m., that ROBERT MARTEL was found unresponsive in his cell by Sergeant Michael Boyle.

38. According to Sergeant Boyle's incident report, he was conducting a security round when he came upon ROBERT MARTEL's cell. Sergeant Boyle observed ROBERT MARTEL laying on his back on his mattress on the cell floor.

39. Sergeant Boyle reported that ROBERT MARTEL's "eyes were open," but that "he did not react to [Boyle's] flashlight being shined on him." ROBERT MARTEL also did not respond when Sergeant Boyle called out to him.

40. Upon entering the cell, Sergeant Boyle again called out ROBERT MARTEL's name and tapped him on the foot, but ROBERT MARTEL remained unresponsive.

41. It was then that Sergeant Boyle noticed ROBERT MARTEL's face "had a pale tint" and "his lips appeared to have a blueish tint."

42. Observing that there was no rise and fall of ROBERT MARTEL's chest to indicate that he was breathing, Sergeant Boyle checked ROBERT MARTEL's carotid artery for a pulse and found none. Sergeant Boyle then called for emergency medical assistance and instructed defendant MUTUNGI, who was also present, to retrieve the Emergency Services Bag.

43. Moments later, several Valley Street Jail staff members—Lieutenants Barnes and Duclos, Sergeant Rutzke, Officers Bolduc and Roberts, and nurse defendants GUE and GUSTAFSON—arrived to attempt to provide life-saving care.

44. Lieutenant Barnes began to administer Cardiopulmonary Resuscitation (CPR) at approximately 11:42 p.m., conducting 30 chest compressions.

45. Sergeant Boyle then administered two rescue ventilations using a Bag Valve Mask (BVM) with the assistance of Officer Bolduc, and defendant GUE applied the Automated External Defibrillator (AED) to ROBERT MARTEL's chest.

46. At approximately 11:44 p.m., the Shift Commander on duty called 911.

47. As Lieutenant Barnes continued with CPR, Sergeant Boyle observed ROBERT MARTEL had blood and vomit spewing from his mouth.

48. Sergeant Boyle then turned ROBERT MARTEL's head to the side, at which time the AED informed the staff members that no shock was advised.

49. Defendant GUE went on to administer two doses of Narcan in ROBERT MARTEL's nostrils and relieve Officer Bolduc, while Lieutenant Barnes continued performing CPR.

50. The AED then again analyzed ROBERT MARTEL and advised that CPR was to be continued, at which point Officer Bolduc took over administering the chest compressions.

51. Lieutenants Barnes and Duclos, Sergeants Boyle and Rutzke, Officers Bolduc, and Roberts, and defendants MUTUNGI, GUE, and GUSTAFSON were unsuccessful in their attempts to revive ROBERT MARTEL during the nine minutes it took for the emergency response team to arrive.

52. At approximately 11:53 p.m., American Medical Response (AMR) and the Manchester Fire Department arrived and took over the attempts to revive ROBERT MARTEL, but to no avail.

53. ROBERT MARTEL was pronounced dead on the scene by AMR Paramedic David Rideout at approximately 12:06 a.m. on May 12, 2021.

## FIRST CAUSE OF ACTION:
## § 1983 CIVIL RIGHTS CLAIM AGAINST ALL INDIVIDUAL DEFENDANTS
## DENIAL OF ADEQUATE MEDICAL CARE

54. Plaintiff repeats every allegation contained in the preceding paragraphs.

55. ROBERT MARTEL, upon arrival at Valley Street Jail, had a serious addiction to drugs and alcohol, and his severe dependency upon these substances was clear or should have been clear to HCDOC staff from his initial booking.

56. Defendants were made aware of ROBERT MARTEL's substance abuse problems almost immediately, and knew he was at high risk for alcohol and drug withdrawal.

57. Despite this knowledge, and the knowledge that the neglect of an inmate experiencing withdrawal could have fatal consequences, defendants, acting with deliberate indifference to ROBERT MARTEL's life, failed to adequately assess and monitor ROBERT MARTEL's condition and failed to adequately treat ROBERT MARTEL for alcohol and drug withdrawal.

58. The conduct and inactions of defendants, acting under color of state law, were done intentionally, maliciously, and sadistically, with deliberate indifference to the rights of ROBERT MARTEL, in violation of his constitutional rights guaranteed under 42 U.S.C. § 1983 and the fifth and fourteenth amendments to the United States Constitution.

59. This conduct was a proximate cause of ROBERT MARTEL's death.

## SECOND CAUSE OF ACTION:
## § 1983 *MONELL* CLAIM AGAINST DEFENDANT
## HILLSBOUROUGH COUNTY

61. Plaintiff repeats every allegation contained in the preceding paragraphs.

62. At all times material to this complaint, defendant HILLSBOROUGH COUNTY had in effect de facto policies, practices, customs, and usages resulting in a gross failure to provide constitutionally appropriate medical care to its inmates.

63. These policies included, but are not limited to:

   a. a policy of denying necessary medical care and treatment to inmates experiencing substance detoxification and withdrawal;

   b. a policy of denying appropriate and adequate withdrawal medication and treatment to inmates experiencing substance detoxification and withdrawal; and

   c. a de jure or de facto medical system allowing medical care to be provided arbitrarily by nurses without any real supervision or oversight by a licensed medical provider.

64. Defendant HILLSBOROUGH COUNTY has received numerous complaints over the years involving inadequate medical care and attention to inmates, particularly with respect to inmates going through substance detoxification and withdrawal, resulting in several lawsuits and court orders. Nonetheless, defendant HILLSBOROUGH COUNTY's inadequate care and deliberate indifference persists.

65. These policies, practices, and customs were a direct and proximate cause of the unconstitutional conduct of defendants, including, but not limited to, the unconstitutional deliberate indifference to the serious medical needs of ROBERT MARTEL.

66. Furthermore, defendant HILLSBOROUGH COUNTY failed to establish guidelines for, and/or train, supervise or educate its agents and employees, including the

defendants, about correct practices and procedures in providing care to individuals experiencing life-threatening substance detoxification and withdrawal.

67. The conduct of defendant HILLSBOROUGH COUNTY was the direct and proximate cause of the violation of ROBERT MARTEL's rights as guaranteed by 42 U.S.C. § 1983 and the fifth and fourteenth amendments to the United States Constitution.

68. As a direct and proximate result of the defendant's wrongful policies, practices, customs, and usages complained of herein, ROBERT MARTEL suffered a tragic death that could have and should have been completely avoided.

### THIRD CAUSE OF ACTION: MEDICAL NEGLIGENCE AGAINST NURSE DEFENDANTS

69. Plaintiff repeats every allegation contained in the preceding paragraphs.

70. The nurse defendants owed a duty to ROBERT MARTEL to provide him with reasonable and proper medical care in accordance with the applicable standard of care.

71. By failing to adequately recognize, monitor, and treat ROBERT MARTEL's serious substance detoxification and withdrawal, the nurse defendants violated that duty and violated the applicable standard of care.

72. As a direct and proximate result of the nurse defendants' carelessness, negligence, and improper care, ROBERT MARTEL has suffered the ultimate injury in the form of the loss of his life, among numerous other injuries and damages.

**WHEREFORE**, the Plaintiff demands the following relief against Defendants:

A. A trial by jury;

B. Compensatory damages to the Estate of ROBERT MARTEL for past, present, and future damages including, but not limited to, ROBERT MARTEL's death,

pain and suffering, and loss of enjoyment of life, together with interest and costs as provided by law;

C. Punitive damages;

D. All ascertainable economic damages, including past and future loss of earnings and/or earning capacity;

E. The appointment of a monitor to oversee the policies and actions of defendant HILLSBOROUGH COUNTY and its agents and employees;

F. Costs, interest, and attorneys' fees; and

G. Such other and further relief as this Court may deem proper and just, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: November 8, 2021
Dover, New Hampshire

By: /s/ Lawrence A. Vogelman
Lawrence A. Vogelman, #10280
SHAHEEN AND GORDON, P.A.
353 Central Avenue, Suite 200
Dover, NH 03821-0977
(603) 749-5000
lvogelman@shaheengordon.com

By: /s/ Brittani Schanstine
Brittani Schanstine. #
SHAHEEN AND GORDON, P.A.
353 Central Avenue, Suite 200
Dover, NH 03821-0977
(603) 749-5000
bschanstine@shaheengordon.com

Attorney for Plaintiff,
ESTATE OF ROBERT MARTEL